UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| United States of America | ) | |
| | ) | |
| v. | ) | File No. 1:06-cr-19-jgm-1 |
| | ) | |
| Keith Justin Baker | ) | |

OPINION AND ORDER
(Docs. 144, 145, 146, 147, 148)

Defendant Keith Justin Baker, proceeding pro se, has filed a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. (Doc. 144.) Baker was convicted in 2010 after pleading guilty to being a felon in possession of a firearm in violation of 18 U.S.C § 922(g)(1). He was also found to be an armed career criminal under 18 U.S.C. § 924(e), and sentenced to serve 180 months in prison followed by three years of supervised release. (Doc. 123.)

Baker now brings a series of claims contesting the validity of his conviction and sentence. Among his claims are: challenges to the legality of his arrest; a Sixth Amendment claim regarding the Court's fact-finding at sentencing; challenges to the Court's jurisdiction; and allegations of ineffective assistance of counsel. (Doc. 144.) In addition to his § 2255 motion, Baker has filed a related motion to void the judgment (Doc. 145), a motion for relief under Federal Rule of Civil Procedure 60(b) (Doc. 147), a motion for a subpoena duces tecum (Doc. 146), and a

motion for an emergency hearing (Doc. 148).  For the reasons set forth below, Baker's motions are DENIED.

## Factual Background

On June 23, 2005, a shooter fired three shots into the home of Joseph E. Joseph in Burlington, Vermont, then fled by car. Police subsequently spoke with Joseph, who stated that he had been in an argument with Baker earlier that day, and during the argument Baker had displayed what appeared to be a handgun. Witnesses at the scene of the shooting were able to provide police with a description of the shooter's vehicle, which resembled the type of vehicle owned by Baker's wife.

A woman subsequently informed police that one day after the shooting, Baker came to her home carrying a white trash bag and informed her that he was going to "bury the gun."  Police were able to recover the trash bag, which contained a semi-automatic pistol with two loaded magazines.  A fingerprint taken from a bullet in one of the magazines was later shown to match Baker's palm print.  In addition, analysis of one of the shell casings found at the shooting showed that it had been fired from the recovered gun.

Law enforcement was also able to locate the gun's original owner, who reported that he had sold the gun to a person from Burlington named "Keith."  The seller had recorded "Keith's" license plate number, which matched the vehicle registered to

Baker's wife. Moreover, the seller was able to identify Baker from a photographic lineup. Baker subsequently admitted that he had bought the gun.

In March 2006, a grand jury returned a two-count Indictment charging Baker as a felon in possession of (1) a firearm and (2) a quantity of ammunition, both in violation of 18 U.S.C. § 922(g)(1). (Doc. 2.) On September 2, 2008, Baker pled guilty to the first count. Dkt. Entry No. 97 (Sept. 2, 2008). The written plea agreement specified that if the Court determined that the armed career criminal provision in 18 U.S.C. § 924(e) applied, Baker could be subject to a mandatory term of imprisonment of fifteen years. (Doc. 95.)

The Pre-sentence Report ("PSR") determined that Baker's base offense level was 14 under U.S.S.G. § 2K2.1. Four levels were added under U.S.S.G. § 2K2.1(b)(6) because Baker had used the gun in connection with an aggravated assault (the shooting at Joseph's home). Three levels were deducted for acceptance of responsibility, resulting in an offense level of 15.

The PSR reviewed Baker's ten previous state court felony convictions to determine whether any qualified as a predicate "violent felony" under 18 U.S.C. § 924(e). The PSR concluded that five of the ten convictions did qualify, including two for escape, aiding another escaped prisoner, and two for burglary. Accordingly, Baker qualified as an armed career criminal,

thereby substantially increasing his base offense level under U.S.S.G. § 4B1.4.

The PSR concluded that a base level of 34 was warranted under U.S.S.G. § 4B1.4(b)(3)(A) because Baker used the gun in connection with a "crime of violence." Incorporating a three-level reduction for acceptance of responsibility, the PSR calculated the total offense level to be 31. With a Criminal History Category VI, the advisory Guideline range was 188-235 months imprisonment.

At the plea and sentencing hearings, Baker appeared pro se with Attorney John C. Mabie acting as standby counsel. In written filings and at the sentencing hearing, Baker argued that the PSR incorrectly classified the five prior convictions as predicate felonies under 18 U.S.C. § 924(e). The government contended that more than five of Baker's ten felony convictions qualified as predicate offenses.

The Court adopted the PSR's analysis with respect to the predicate violent felonies under § 924(e). The Court declined to find that Baker had used the gun in connection with a crime of violence. Granting credit for acceptance of responsibility, the Court concluded that Baker's total offense level was 30, and he was in Criminal History Category VI. This resulted in an advisory Guideline range of 168-210 months. The Court ultimately sentenced Baker to the statutory minimum under

§ 924(e) of 180 months in prison followed by three years of supervised release.

Baker filed a timely notice of appeal with the United States Court of Appeals for the Second Circuit. (Doc. 124.) The Second Circuit appointed Georgia J. Hinde, Esq. as appellate counsel. Attorney Hinde argued that Baker's two previous felony convictions for escape from prison, as well as the conviction for aiding another prisoner's escape, did not qualify as violent felony convictions under § 924(e). Prior to oral argument, Baker wrote to the Second Circuit and complained about Attorney Hinde's representation. Attorney Hinde subsequently moved to be relieved as Baker's counsel. The Second Circuit denied the motion, held oral argument, and affirmed this Court's judgment. United States v. Baker, 665 F.3d 51 (2d Cir. 2012). The mandate issued March 2, 2012. (Doc. 142.)

Baker did not petition the United States Supreme Court for a writ of certiorari. The government concedes Baker's § 2255 motion was timely filed. See generally Doc. 152.

## Discussion

I. Section 2255

The first sentence of § 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the

5

> sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). Relief under the statute may be based only on "constitutional error . . . or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). Among the reasons for circumscribing relief in this manner are "a respect for the finality of criminal sentences, the efficient allocation of judicial resources, and an aversion to retrying issues years after the underlying events took place." Id. (citation omitted).

A § 2255 motion is "not a substitute for [a direct] appeal." Rosario v. United States, 164 F.3d 729, 732 (2d Cir. 1998) (quoting United States v. Munoz, 143 F.3d 632, 637 (2d Cir. 1998)); Marone v. United States, 10 F.3d 65, 67 (2d Cir. 1993). Consequently, claims that could have been raised on direct appeal, but were not, are generally unreviewable under § 2255, unless the defendant can demonstrate either "cause for failing to raise the issue, and prejudice resulting therefrom" or "actual innocence." Sapia v. United States, 433 F.3d 212, 217 (2d Cir. 2005) (quoting Rosario, 164 F.3d at 732).

One exception to this procedural bar is ineffective assistance of counsel claims, which need not be incorporated

into a criminal defendant's direct appeal.  Massaro v. United States, 538 U.S. 500, 508–09 (2003). As the Supreme Court has explained, because the trial judge is in the best position to assess the merits of an ineffective assistance claim, "a motion brought under § 2255 is preferable to [a] direct appeal for deciding [such] claims." Id. at 504.

Additionally, "once a matter has been decided adversely to a defendant on direct appeal it cannot be relitigated in a collateral attack." United States v. Natelli, 553 F.2d 5, 7 (2d Cir. 1977) (citation omitted); see also Cabrera v. United States, 972 F.2d 23, 25 (2d Cir. 1992) (noting a § 2255 petition cannot "relitigate questions which were raised and considered on direct appeal" (internal quotation marks and citation omitted)). "Reconsideration is permitted only where there has been an intervening change in the law and the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal." Chin v. United States, 622 F.2d 1090, 1092 (2d Cir. 1980).

II.  Procedural Bar

Baker's § 2255 motion lists eight grounds for relief, none of which were raised on direct appeal.  On appeal, Baker argued that the Second Circuit Court of Appeals should "reverse his sentence because the district court did not rely on the kinds of state court records that are required to reliably establish the

violent nature of a defendant's prior convictions," and that as a result, Baker should not have been found to be an armed career criminal under § 924(e). (Doc. 152-1 at 6.) Baker's § 2255 motion does not argue that the state records were unreliable, and references his prior convictions in the context of a newly-raised Sixth Amendment claim.

Specifically, the first claim in Baker's § 2255 motion is that the Court made factual findings that should have been made by a jury. This argument appears to assert a Sixth Amendment violation under <u>United States v. Booker</u>, 543 U.S. 220 (2005). Baker did not raise a <u>Booker</u> claim on direct appeal.

Baker's second claim is that the libraries in federal prisons do not have adequate legal resources, thus preventing him from bringing a claim under the Uniform Commercial Code. His third claim contests this Court's authority, asserting that "[t]he Judge in this case did not Perfect his title to his office." (Doc. 144 at 8.) Neither of these claims was raised on direct appeal.

Baker's fourth claim (entitled "Ground Five" in his motion) asserts that his case had no "Nexus" with "the Opposing Party or Subject-matter jurisdiction by the Court." <u>Id.</u> at 9. His fifth claim (also entitled "Ground Five") asserts that he was denied due process because he was arrested without a warrant. <u>Id.</u> at 11. In an apparently related claim, his sixth ground for

relief is that "[t]he Court was estopped from subject-matter jurisdiction because the warrant was defective . . . ." Id. at 12.

In his seventh claim, Baker states in conclusory fashion that the Court's judgment against him is void. Id. at 13. His eighth and final claim is that the Second Circuit disregarded his complaints about Attorney Hinde, thus denying him due process. Id. at 14-15. Baker further contends that each of these eight claims should have been raised on appeal, and that counsel's failure to do so constitutes ineffective assistance. Id.

When a defendant fails to raise a claim on direct appeal, he may not raise such a claim on collateral review unless he can show (1) "cause" for his failure to raise the claim on appeal; and (2) actual "prejudice" due to the alleged violation. See Reed v. Farley, 512 U.S. 339, 354 (1994). The cause prong requires the movant to show something "external to the petitioner, something that cannot fairly be attributed to him," resulted in his failure to raise a claim on direct appeal. Coleman v. Thompson, 501 U.S. 722, 753 (1991). To establish prejudice, the movant must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982).

9

If the movant is unable to show cause and prejudice, his procedural default may nonetheless be excused if he can show that a fundamental miscarriage of justice would result from a failure to hear the claim on the merits, i.e., "that he is actually innocent of the crime for which he has been convicted." Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (citing Schlup v. Delo, 513 U.S. 298, 321 (1995)). This ground for excusing procedural default should be applied only in "extraordinary" cases, as courts deem substantial claims of actual innocence "extremely rare." Schlup, 513 U.S. at 321-22 (internal quotation marks omitted).

In this case, Baker has not established either cause for his failure to raise his current arguments on direct appeal, or prejudice resulting from that failure. Although Baker contends that his claims should have been raised by counsel, those claims are without merit for the reasons discussed below, and the failure to raise them did not constitute ineffective assistance of counsel. See Edwards v. Carpenter, 529 U.S. 446, 451 (2000) (ineffective assistance of counsel may constitute "cause" for a procedural default only if the assistance was so ineffective that it violated the Constitution). Nor has he set forth a viable claim of actual innocence. With no evidence of a justifying cause, and because his arguments on appeal would not have afforded him relief, the Court deems his claims – with the

10

exception of the ineffective assistance of counsel claim itself – procedurally barred.

III. The Merits

Even if the Court were to set aside the question of a procedural bar, Baker has not set forth meritorious grounds for collateral relief.

In his first claim, Baker asserts the Court made improper factual findings at sentencing, thereby violating his rights under the Sixth Amendment. His motion cites a United States Supreme Court decision from January 12, 2005, Case Nos. 04-104 and 04-105, which corresponds with the Supreme Court's Booker decision. See Doc. 144 at 5. In Booker, the Supreme Court stated that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." 543 U.S. at 244. In Baker's case, the essential facts found by the Court at sentencing pertained to his prior convictions, and whether those convictions qualified as predicate offenses under 18 U.S.C. § 924(e). The Booker decision specifically excepted prior convictions from its general rule, holding that these convictions do not require admission by the defendant or a finding by a jury. Id.; see also Sykes v. United States, 131 S. Ct. 2267 (2011) (affirming

§ 924(e) sentence enhancement where the determination whether a prior conviction was for a "violent felony" was made by the Court, not a jury). This first claim for relief is, therefore, without merit.

Baker's second claim asserts he has been prejudiced because he is unable to access the Uniform Commercial Code while in federal prison. He further contends that without such materials, he is unable to contest the "label" of "sovereign citizen." (Doc. 144 at 7.) As one court recently explained, "[s]o-called sovereign citizens believe that they are not subject to government authority and employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal proceedings." Gravatt v. United States, 100 Fed. Cl. 279, 282 (2011). Some "sovereign citizens" also seek to recover money from the federal government by filing UCC financing statements. Id. at 282-83. While Baker's claim with respect to library resources in prison may be accurate, his level of access to UCC materials has no bearing on his ability to obtain collateral relief of his conviction or sentence.

In his third claim for relief, Baker contends the Court failed to "[p]erfect his title to his office," and that each of its rulings are therefore void. (Doc. 144 at 8.) Baker refers the Court to a "Proof of Claim" sent to the United States Attorney's Office, in which he makes reference to the judicial

oath of office. (Doc. 144-3 at 9-10.) Baker has not provided any support for his claim that the Court did not take the required oath of office, or that it acted without authority. See United States v. Conces, 507 F.3d 1028, 1041 (6th Cir. 2007) (federal law does not require "that a district judge demonstrate to the satisfaction of a litigant in a particular case that he or she has taken the oath"). Accordingly, this claim is without merit.

Baker's next claim asserts there was no "Nexus" upon which the Court could establish subject matter jurisdiction. He again refers to the "Proof of Claim," in which he describes the "Nexus" as a contract, and contends subject matter jurisdiction is lacking where an underlying statute is unconstitutional. (Doc. 144-3 at 4.) The arguments in the "Proof of Claim" appear to be boilerplate, with citations from various jurisdictions around the country, and bear no apparent relationship to his case. As Baker has not provided any arguments specific to his case, the Court declines to provide relief on this claim.

Baker's fifth claim for relief contests the validity of his conviction based upon an allegedly warrantless arrest. The Supreme Court has established that when, as in this case, a defendant enters a guilty plea, "he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."

13

Tollett v. Henderson, 411 U.S. 258, 267 (1973); see also United States v. Arango, 966 F.2d 64, 66 (2d Cir. 1992).  The only argument available to a defendant after pleading guilty is to contest the voluntary and intelligent character of his plea.  Tollett, 411 U.S. at 267.  Baker has not claimed his plea was not made voluntarily and intelligently.  Accordingly, his challenge to the legality of his arrest is barred.

In his sixth claim for relief, Baker contends "because the warrant was defective" the Court lacked subject matter jurisdiction.  (Doc. 144 at 12.)  Baker also contends he was not served properly and that the "matter" dealt with a "corporate Fiction."  Id.  Even when the Court considers those statements, there is no legal merit to their assertions.  Baker has thus provided no valid basis for relief on this claim.

Baker's seventh claim for relief states, without support, that the Court's judgment is void.  He contends that by failing to respond to his "Proof of Claim," the government has "agreed that the Judgement is VOID."  (Doc. 144 at 13.)  As discussed above, there is no basis upon which to find that the Court's judgment was void, and Baker's contention that the government has conceded the point is patently without merit.

In his eighth claim for relief, Baker contends the Second Circuit wrongfully dismissed his complaint about appellate counsel's performance.  This Court has no jurisdiction to review

14

the appellate court's ruling on, or treatment of, Baker's complaint. See, e.g., Seese v. Volkswagenwerk, A.G., 679 F.2d 336, 337 (3d Cir. 1982) ("The district court is without jurisdiction to alter the mandate of [the appellate] court on the basis of matters included or includable in defendants' prior appeal."). Accordingly, the Court cannot grant collateral relief on this basis.

Although not set forth as an independent claim, Baker asserts throughout his motion that each of his eight claims should have been raised on direct appeal. Because the claims were not raised on appeal, Baker contends that counsel was ineffective.

To succeed on a claim of ineffective assistance of counsel, a movant must demonstrate (1) that his counsel's performance "fell below an objective standard of reasonableness," and (2) "that the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687–88 (1984). The mere possibility that a particular deficiency might have prejudiced the defendant is not enough. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In addition, "a court must indulge a strong presumption that

15

counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

The Strickland standard also applies to ineffective assistance claims directed at appellate counsel. Abdurrahman v. Henderson, 897 F.2d 71, 74 (2d Cir. 1990). A claim alleging ineffective assistance of appellate counsel on the basis of counsel's omission of an issue will fail unless the petitioner can show "that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994).

For the reasons discussed above, each of Baker's eight claims for relief are without merit. Accordingly, the Court finds that counsel was not ineffective for failing to raise those issues on appeal. Indeed, Baker suffered no prejudice, as the issues raised in his § 2255 motion would not have altered the result of the appellate proceedings. Baker's § 2255 motion (Doc. 144) is therefore DENIED.

IV. Remaining Motions

Baker's remaining motions are equally meritless. His motion to vacate or void the judgment (Doc. 145) contends that he is not a United States Citizen, and is instead his own sovereign. As a sovereign citizen, Baker claims that he is entitled to, among other things, sovereign immunity. Similar arguments have been uniformly rejected by the federal courts.

See, e.g., United States v. Hilgeford, 7 F.3d 1340, 1342 (7th Cir. 1993) (rejecting the "shop worn" argument that a defendant is a sovereign and thus beyond the jurisdiction of the district court); United States v. Hart, 701 F.2d 749, 750 (8th Cir. 1983) (characterizing as "frivolous" an appeal in tax case challenging government's jurisdiction over "sovereign citizen"). The motion is therefore DENIED.

Baker has also filed a motion for relief from judgment under Federal Rule of Civil Procedure 60(b) (Doc. 147), in which he claims the government has agreed to the dismissal of the charges against him, and the Court lacked subject matter jurisdiction. It is plain from the record that the government entered into no such agreement, and as discussed above, Baker's jurisdictional arguments are meritless. Accordingly, this motion is also DENIED.

Baker's final motions before the Court are for a subpoena duces tecum (Doc. 146) and an emergency hearing on his § 2255 motion (Doc. 148). As none of Baker's substantive motions have sufficient merit to warrant further proceedings, these motions are DENIED as moot.

## Conclusion

For the reasons set forth above, Baker's pending motions (Docs. 144, 145, 146, 147, 148) are DENIED.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 9th day of September, 2013.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge